STATE OF CONNECTICUT *v.* JOSEPH STEPHENSON
(AC 31829)

Bishop, Bear and Pellegrino, Js.

Argued June 2—officially released September 20, 2011

*John Timbers*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *David R. Applegate*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Joseph Stephenson, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the third degree in

violation of General Statutes § 53a-136 and two counts of larceny in the fifth degree in violation of General Statutes (Rev. to 2005) § 53a-125a.[1] On appeal, the defendant claims that (1) the trial court improperly charged the jury regarding robbery in the third degree as a lesser included offense of robbery in the second degree, (2) the evidence was insufficient to prove that he committed robbery in the third degree, (3) the jury failed to address whether a videotape admitted into evidence was genuine, (4) the state deprived him of a fair trial and due process by improperly disposing of evidence that would have been central to his defense, and (5) the court improperly precluded testimony that the police coaxed a witness to lie.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 23, 2006, at approximately 1 p.m., Donovan Sinclair, a store detective for the Macy's department store in the Stamford Town Center mall, received notice regarding a suspicious individual in the Polo department at the store. Sinclair then observed, on the security camera, an individual later identified as the defendant in the Polo department. The defendant was carrying a white shopping bag under his arm and

---

[1] The defendant subsequently pleaded guilty to being a persistent larceny offender pursuant to General Statutes § 53a-40 (e).

[2] The defendant also argues that if two or more of his claims are correct, his conviction must be reversed due to an accumulation of errors. The defendant's entire argument in support of this claim consists of one sentence, with no citation to legal authority. We, therefore, decline to review this claim, as it is inadequately briefed. See State v. T.R.D., 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." [Internal quotation marks omitted.]).

was picking out a variety of items. Sinclair monitored the defendant for approximately forty-five minutes and observed him taking items of clothing from the racks, folding them and bending down as if putting the items into the bag. The defendant appeared nervous and was looking around. Although Sinclair did not see a tool in the defendant's hands, it looked like he had something in his hands.[3]

While observing the defendant, Sinclair called upon store manager Steve Johnson for assistance. Johnson remained in the security office to monitor the security camera while Sinclair followed the defendant as he exited the store. When Sinclair reached the defendant, he identified himself as a Macy's store detective and indicated that he wanted to talk to the defendant about the merchandise in the bag. A "heated argument" between Sinclair and the defendant ensued, during which some pushing and shoving took place. Sinclair attempted to handcuff the defendant but was only able to get one handcuff on him. Johnson and two other individuals from Macy's came outside and assisted Sinclair in pinning the defendant against a wall until the police arrived and placed the defendant in a police car. When Sinclair returned to the store, he identified six items from Macy's that had been recovered from the shopping bag.[4] The total cost of these items was $356.49.

In addition to these items, the police recovered three pairs of eyeglasses, totaling approximately $600, from the Macy's bag. Stephen Singer, the retail manager at a LensCrafters store in the Stamford Town Center mall, later identified the three pairs of eyeglasses as belonging to that store. Singer checked the store records and

---

[3] Sinclair also testified that in August, 2006, sensor tags were placed on the clothing that was sold at Macy's. Macy's store employees would remove these tags after a purchase. Sinclair testified that an experienced shoplifter would be able to remove these tags using tools such as a knife or a wire cutter.

[4] Specifically, he identified five pairs of pants and one shirt.

determined that the eyeglasses had been accounted for when the store had closed the night before, and that they had not been sold by anyone at the store on August 23, 2006. Singer also recalled that the defendant had been in the store between approximately 10:30 a.m. and 11:30 a.m. that morning. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly charged the jury that it could find him guilty of robbery in the third degree as a lesser included offense of robbery in the second degree. Because the court did not charge on robbery in the third degree as a lesser included offense of robbery in the second degree, the defendant's claim must fail.

The following facts are necessary for the resolution of the defendant's claim. The amended information dated October 8, 2008, charged the defendant with robbery in the second degree in violation of General Statutes §§ 53a-135 (a) (2) and 53a-133 (1),[5] and with two counts of larceny in the fifth degree in violation of General Statutes §§ 53a-125a (a), 53a-118 (a) (3) and 53a-119 (9). At the conclusion of the state's case, the defendant moved for a judgment of acquittal as to each of the three counts. The court granted the motion with regard to the charge of robbery in the second degree but indicated that a charge of robbery in the third degree would be submitted to the jury. At the conclusion of the evidence and prior to the court's charge, the state filed a second amended information charging the defendant

[5] This count charged, in relevant part, that "on or about August 23, 2006, at the Macy's Department Store located on Broad Street, in the City of Stamford, [the] Defendant . . . while in the course of committing a larceny, or in the immediate flight therefrom, displayed and threatened the use of what he represented by his words and conduct to be a dangerous instrument to prevent and overcome resistance to the taking of the property, in violation of [§§] 53a-135 (a) (2) and 53a-133 (1) of the Connecticut General Statutes."

with robbery in the third degree in violation of §§ 53a-136 (a) and 53a-133 (1).[6] The court informed the jury that "[i]nitially, the defendant was charged with robbery in the second degree. That charge is no longer up for your consideration. We're not expecting you to render a verdict on that. So, that charge is out. Instead, you're going to be—the lawyers are going to argue about and I will instruct you on a charge called robbery in the third degree. Another word for it is simple robbery." Subsequently, the court properly charged the jury regarding the elements of robbery in the third degree, in accordance with the amended information. The court did not instruct the jury that it could find the defendant guilty of robbery in the third degree as a lesser included offense of robbery in the second degree. Accordingly, the defendant's claim must fail.

## II

The defendant next argues that the evidence was insufficient to prove that he committed robbery in the third degree. Specifically, the defendant argues that the evidence was insufficient to establish that he used force in connection with the alleged larceny. We disagree.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably

---

[6] This count charged, in relevant part, that "on or about August 23, 2006, at the Macy's Department Store located in Broad Street, in the City of Stamford, [the] defendant . . . while in the course of committing a larceny, used physical force upon another person to prevent and overcome resistance to the taking of the property and to the retention thereof immediately after the taking, in violation of Sections 53a-136 (a) and 53a-133 (1) of the Connecticut General Statutes."

could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because [our Supreme Court] has held that a jury's factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Lokting*, 128 Conn. App. 234, 241–42, 16 A.3d 793, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011).

In the second amended information, the state charged the defendant with robbery in the third degree in violation of §§ 53a-136 (a) and 53a-133 (1).[7] Specifically, the state charged that the defendant, "while in the course of committing a larceny, used physical force upon another person to prevent and overcome resistance to the taking of the property and to the retention thereof immediately after the taking . . . ." According to the defendant, the jury reasonably could not have concluded that he used force during his encounter with Sinclair. On the basis of our review of the record, however, we conclude that the jury reasonably could have found that the defendant used force in the course of committing the larceny.

---

[7] General Statutes § 53a-136 provides: "A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133." General Statutes § 53a-133 provides in relevant part: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of . . . (1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ."

Sinclair testified that when he followed the defendant out of the store and tried to speak to him about what was in the bag, the defendant tried to walk away and said that he had not done anything. In response to Sinclair's question, the defendant indicated that he had a pocketknife, although Sinclair did not see a knife, as the defendant kept his hand closed "in a ball . . . ." At that point, they had a "[v]ery heated argument" as Sinclair tried to recover the merchandise. Sinclair testified that there was "a little pushing and shoving" and that he was unable to get handcuffs on the defendant. When the other employees from Macy's arrived, they were able to restrain the defendant against the wall, although Sinclair still was unable to handcuff the defendant. Contrary to the defendant's claim, the jury was permitted to infer, on the basis of Sinclair's testimony, that the defendant was pushing and shoving in an effort to prevent and overcome resistance to the taking of the merchandise and to the retention thereof. Accordingly, the evidence was sufficient for the jury to have found the defendant guilty of robbery in the third degree.

### III

The defendant next claims that the court improperly failed to charge the jury regarding a videotape that had been admitted into evidence. Specifically, the defendant argues that once the court admitted the videotape into evidence, it improperly failed to charge the jury that it was required to find that the videotape was true, accurate and authentic before it could consider the videotape on the merits. We disagree.

The following facts are necessary for the resolution of the defendant's claim. Outside the presence of the jury, the state sought to have the surveillance videotape from Macy's admitted into evidence.[8] The defendant

---

[8] To lay the foundation for the admission of the videotape, Sinclair testified, inter alia, that he was familiar with how the recording equipment worked, and that it was his job to operate the equipment and change the tapes on a daily basis. He stated that the equipment was working properly on August

objected, citing issues pertaining to the chain of custody and arguing that there were gaps on the videotape.[9] After hearing the defendant's objection, the court admitted the videotape into evidence as a full exhibit and stated that the defendant could address his concerns through cross-examination. The defendant filed a request to charge that asked the court to instruct the jury that before it could consider the tape as evidence in the case, the state had to prove by clear and convincing evidence that the tape was a true, accurate and authentic depiction of the events that transpired at Macy's on August 23, 2006. The court declined to charge the jury as requested, stating that it was up to the jury to determine the credibility of any evidence. The defendant took an exception to the failure to charge as requested. Thereafter, during its charge to the jury, the court properly charged, inter alia, that it was up to the jury to determine the facts, to determine how much weight to give to any particular evidence and to decide which testimony to believe and which testimony not to believe.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise

23, 2006, the store was well lit and the video was not stopped or paused while the defendant was being recorded. After the incident with the defendant was over, Sinclair removed the videotape from the videocassette recorder so that he could give it to his supervisor. Sinclair testified that he did not make any changes or alterations to the videotape and that when he viewed the tape prior to testifying, it accurately depicted what he saw on August 23, 2006.

[9] The defendant also filed a motion to preclude the use of the videotape at trial.

letter of such a request. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible [impropriety] when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 317, 977 A.2d 209 (2009). Because the defendant's claim is nonconstitutional in nature, we must determine whether it is reasonably probable that the jury was misled. See *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997) ("claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature"); *State* v. *Stevenson*, 53 Conn. App. 551, 579–81, 733 A.2d 253 (claim that court improperly failed to instruct jury that it could make its own determination regarding authenticity of letter admitted into evidence, when reviewed in context of entire charge, was not reasonably probable to have misled jury), cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

According to the defendant, § 9-1 of the Connecticut Code of Evidence requires the court to charge the jury, once the videotape had been admitted, that it was required to find that the videotape was true, accurate and authentic before it could consider the videotape on the merits. Section 9-1 (a) provides: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be."[10] The commentary to § 9-1 (a) provides in relevant part: "Before an item of evidence may be admitted, there must be a preliminary showing of its genuineness, i.e., that the proffered item of evidence is what

---

[10] Rule 901 (a) of the Federal Rules of Evidence, which the defendant also cites, provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

its proponent claims it to be. . . . The proponent need only advance evidence sufficient to support a finding that the proffered evidence is what it is claimed to be. Once this prima facie showing is made, the evidence may be admitted and the ultimate determination of authenticity rests with the fact finder." (Citations omitted; internal quotation marks omitted.) Conn. Code Evid. § 9-1, commentary (a).

Contrary to the defendant's claim, the rule and commentary pertain to the admissibility of the evidence and do not require the court to charge the jury regarding the authenticity of the evidence once the evidence has been admitted. See *State* v. *John L.*, 85 Conn. App. 291, 301, 856 A.2d 1032 ("[s]ection 9-1 [a] requires only a prima facie showing of genuineness and leaves it to the fact finder to decide the true authenticity and probative value of the evidence"), cert. denied, 272 Conn. 903, 863 A.2d 695 (2004). As indicated previously, the court properly charged the jury with regard to its duty to determine the facts and decide how much weight to give to the evidence. "It is well settled that [a]bsent evidence to the contrary, a jury is presumed to have followed the court's instructions." (Internal quotation marks omitted.) *State* v. *Serrano*, 123 Conn. App. 530, 541, 1 A.3d 1277 (2010), cert. denied, 300 Conn. 909, 12 A.3d 1005 (2011). On the basis of our review of the court's charge as a whole, we conclude that there was no reasonable probability that the jury was misled. The defendant's claim, therefore, must fail.

## IV

The defendant next claims that the state deprived him of a fair trial by improperly disposing of evidence that would have been central to his defense.[11] We disagree.

---

[11] The defendant also argues that the court failed to charge the jury, based on *Arizona* v. *Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), that if the items were returned, it could infer that the facts were against the state's interest. The defendant, however, has not briefed this

The following facts are necessary for the resolution of the defendant's claim. Prior to the commencement of the evidence, the defendant filed a motion to dismiss the charges on the ground that the state intentionally had disposed of evidence critical to his defense. Claiming violations of due process under the United States constitution and the constitution of Connecticut, the defendant argued that, rather than preserving the evidence, the Stamford police department took a photograph of the evidence and returned the items to Macy's and LensCrafters. The motion enumerated several ways in which the return of the items allegedly interfered with the defendant's ability to defend against the pending charges.[12] Following oral argument, the court denied the motion, indicating that it was untimely filed, the defendant would be able to make his points through cross-examination or extrinsic evidence, and the defendant had not shown that he was prejudiced by the return of those items. At the conclusion of the evidence, the court again discussed its ruling with respect to the returned merchandise. Specifically, the court noted that although the case had been pending for two years, the defendant's motion was filed on the first day of trial and that it was, therefore, untimely. The court also indicated its belief that the matter was controlled by General Statutes § 54-36a,[13] which provides for the

issue, and we, therefore, consider it to be abandoned. See footnote 2 of this opinion.

[12] With regard to the clothing from Macy's, the defendant argued, inter alia, that if the state had not returned the items, he would have been able to prove that the clothing was not damaged and, therefore, that he did not remove the sensor tags from the items. He also argued that he would have been able to show that he was returning the pants to Macy's because the belt loops were too small and that the clothes were unzipped and unbuttoned, and therefore not on display for sale. With regard to the eyeglasses, the defendant argued that if the evidence had been preserved, he would have been able to show that they contained prescription lenses and that they were not new. He also argued that the numbers etched into the eyeglasses were not legible from the photograph.

[13] General Statutes § 54-36a (b) (1) provides in relevant part: "Whenever property is seized in connection with a criminal arrest or seized pursuant

return of stolen property if, in the opinion of the law enforcement officer, the property does not exceed $250, and *State* v. *Davis*, 10 Conn. App. 130, 521 A.2d 1051 (1987).

On appeal, the defendant argues that the state deprived him of a fair trial by disposing of evidence that would have been central to his defense. Specifically, the defendant contends that his due process rights under the state constitution were violated by the return of the evidence at issue. We disagree and conclude that the court properly applied *Davis* to the present case. We further conclude that the defendant has not shown that the return of the merchandise deprived him of his due process rights under the state constitution.

In *Davis*, a case that involved the theft of five or six jogging suits from a K-Mart department store, the defendant argued that his due process rights were violated when the police returned the items to the store.[14] In rejecting this claim, this court stated that "[t]he police acted properly and in accordance with the statute in returning the items to the store. Unless the state willfully withheld evidence, it cannot be said that it acted in derogation of the defendant's due process rights. Only an intentional or deliberate suppression of evidence is a per se violation of due process sufficient to reverse or nullify a conviction. . . . Here, the state did not conceal, suppress, lose or destroy the evidence sought by the defendant. . . . The jogging suits were properly returned to the store to which the defendant

---

to a search warrant without an arrest, the law enforcement agency . . . shall file . . . an inventory of the property seized. The inventory, together with the uniform arrest report, in the case of an arrest, shall be filed with the clerk of the court . . . except, when the property is stolen property and, in the opinion of the law enforcement officer, does not exceed two hundred fifty dollars in value . . . the filing of an inventory shall not be required and such property may be returned to the owner. . . ."

[14] The combined value of the jogging suits was slightly more than $100. *State* v. *Davis*, supra, 10 Conn. App. 132.

had full access. Between the time of the arrest and the eve of the trial, when the defendant issued a subpoena to the police for the suits, he made no attempt to obtain the suits himself nor did he move in court to preserve the evidence. His failure to make a timely attempt to do so precludes him from claiming that the state violated his due process rights. . . . The defendant's own default cannot be attributed to the state." (Citations omitted; internal quotation marks omitted.) Id., 133.

In the present case, as in *Davis*, the state did not conceal, suppress, lose or destroy the evidence at issue. Rather, the merchandise was returned pursuant to § 54-36a. The court noted that § 54-36a provides for the return of the merchandise if the officers believe that the value of the property does not exceed $250. The court referenced the testimony of one of the officers, who indicated that the property was returned because it was of minimal value.[15] Finally, as in *Davis*, the court in the present case noted that the defendant had ample opportunity to review the evidence and make any motions related to the return of the property, yet this was not done until just prior to the commencement of trial. On the basis of the foregoing, we conclude that the court properly applied the *Davis* case to the facts of the present case and concluded that the state had not deprived the defendant of a fair trial by improperly disposing of the evidence.

The defendant argues, however, that *Davis* does not apply because, unlike *Davis*, the value of the merchandise in the present case far exceeded $250. Even if we assume that *Davis* does not apply, the defendant still

---

[15] Peter McManus, a patrol officer with the Stamford police department, testified that the decision whether to take items of property depends on the value of the property, stating that "[i]f it was a felony, if it was a two or three thousand dollar felony of shoplifting, we would take the items. If it is a misdemeanor, a lesser charge, we usually have a picture taken by the employer at the store."

cannot prevail on his claim that his due process rights under the state constitution were violated by the return of the merchandise. "[O]ur Supreme Court has set forth the analytical path for determining whether the failure of the police to preserve evidence constitutes a due process violation under our state constitution. In *State v. Morales*, 232 Conn. 707, 727, 657 A.2d 585 (1995), the court expressly rejected the federal standard of *Arizona* v. *Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The court in *Morales* held that the good or bad faith of the police in failing to preserve potentially useful evidence cannot be dispositive of whether a criminal defendant has been deprived of due process of law. . . . Rather, in determining whether a defendant has been afforded due process of law under the state constitution, the trial court must employ the [*State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Thompson*, 128 Conn. App. 296, 301–302, 17 A.3d 488 (2011). Applying these factors to the present case, we conclude that the defendant's due process rights under our state constitution were not violated by the return of the merchandise to the stores.

The first factor of the balancing test involves the materiality of the missing evidence. "The measure of materiality is whether there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (Internal quotation marks omitted.) Id., 303. On the basis of our review of the record, we cannot conclude that the result of the proceedings would have been different had the evidence been available to the defense. The defendant had the ability, through cross-examination and extrinsic evidence, to make the points that he argued in the motion to dismiss regarding the unavailability of the evidence. Additionally, we cannot conclude, under the second *Asherman* factor, that there was a likelihood of mistaken interpretation of the photograph by the witnesses or jury. With regard to the reason for the unavailability, the evidence was returned based on the value of the items. Finally, the defendant has not shown that he suffered prejudice by the return of the items. As noted by the trial court, although the case was pending for two years, the defendant's motion was not filed until just prior to the commencement of trial and was therefore untimely. Accordingly, we conclude that the return of the evidence did not deprive the defendant of his right to a fair trial under the state constitution.

V

The defendant next claims that the court improperly precluded Sinclair's testimony that the police had coaxed him to lie. The defendant argues that he would have used this testimony to impeach Singer with regard to the LensCrafters incident, on the theory that if the police had encouraged Sinclair to lie with regard to the incident at Macy's, they also would have encouraged Singer to lie with regard to the incident at LensCrafters. We disagree.

The following facts are necessary for the resolution of the defendant's claim. Sinclair testified as a witness during the state's presentation of evidence. Later, the

defendant called Sinclair to testify during the presentation of his case. During an offer of proof outside the presence of the jury, Sinclair testified that the officers told him, prior to his testimony for the state, that he should say that the defendant was waving a knife at him during their encounter outside the Macy's store.[16] The defendant sought to establish, through this testimony, that the police encourage people to lie, and because they had encouraged Sinclair to lie, they also encouraged Singer to lie with respect to the eyeglasses at LensCrafters. Following argument on the issue, the court sustained the state's objection and precluded the defendant from pursuing this line of inquiry in front of the jury. The court later denied the defendant's motion for a mistrial, reasoning that the defendant had the opportunity to question Singer on cross-examination and had suffered no prejudice. On appeal, the defendant argues that Sinclair's testimony would have been highly relevant and would have supported his position that Singer's testimony was given in response to police coaxing.

"As a preliminary matter, we set forth the standard of review. We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal

---

[16] Sinclair testified as follows: "Then he said, do you remember something about the knife? And I said, what knife? He said, well, we took a couple of knives off him. But was he waving a knife at you? And I said, no, he wasn't waving a knife. He said, well, you should say that. That was it."

quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 818, 970 A.2d 710 (2009). "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in precluding Sinclair's testimony in order to show that the police had coaxed Singer to lie. Sinclair testified during the offer of proof regarding what the police had told *him* prior to his testimony for the state. There was nothing in that testimony pertaining to Singer or establishing that the police had coaxed Singer to lie with regard to the incident at LensCrafters. The defendant did not attempt to establish through cross-examination that the police had coaxed Singer to lie. In the absence of such a foundation, we cannot say that the court abused its discretion in refusing to admit this evidence.

The judgment is affirmed.

In this opinion the other judges concurred.