STATE OF CONNECTICUT *v.* MAHENDRA NARAIN
(AC 32398)

DiPentima, C. J., and Alvord and Foti, Js.

Argued November 15, 2011—officially released February 21, 2012

*Elizabeth M. Inkster*, senior assistant public defender, with whom was *Mario Cerame*, certified legal intern, for the appellant (defendant).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Jayne Kennedy*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Mahendra Narain, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101 (a) (3), conspiracy to commit burglary in the second degree in violation of General Statutes §§ 53a-48 and 53a-102 (a), and conspiracy to commit larceny in the third degree in violation of General Statutes § 53a-48 and General Statutes (Rev. to 2007) § 53a-124 (a) (2).[1] On appeal, the defendant claims that (1) the evidence was insufficient to convict him of the crimes of conspiracy to commit burglary in the first degree and conspiracy to commit burglary in the second degree, (2) the trial court improperly precluded him

---

[1] The jury found the defendant not guilty of the charges of accessory to burglary in the first degree in violation of General Statutes §§ 53a-8 and 53a-101 (a) (3), accessory to burglary in the second degree in violation of §§ 53a-8 and 53a-102 (a), and larceny in the third degree in violation of §§ 53a-8 and 53a-124 (a) (2).

We note that § 53a-124 (a) (2) was amended in 2009 to require the value of the stolen property to exceed $2000, increased from the previously required $1000. See Public Acts 2009, No. 09-138, § 3, codified at General Statutes (Sup. 2010) § 53a-124 (a) (2). For convenience, we refer to the 2007 codification of the statute, which was the one that was in effect at the time of the offense in the present case. All references to § 53a-124 (a) (2) are to the 2007 revision.

from cross-examining Kowsila Singh about her daughter's place of residence and (3) the court improperly denied his motion in limine to preclude the state from presenting evidence as to the value of certain stolen jewelry. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 4, 2008, Singh and her son left her apartment on Lounsbury Street in Waterbury to visit her brother, who lived nearby, to watch fireworks. Singh's ailing mother remained at the apartment. Shortly after arriving at her brother's home, Singh realized that she had forgotten to bring her purse. She decided to return to her apartment, and her son wanted to accompany her to retrieve his cellular telephone charger. At approximately 9 p.m., Singh's sister drove them back to Singh's apartment. Upon arrival, Singh's son exited the vehicle and started up the stairs of the five-family apartment house. At that point, Singh heard a voice saying, "run, run," and she looked up to her window on the second floor and saw two individuals exiting from the window. The area was well lit by a streetlight located in front of the building.

Singh exited the vehicle, and she watched the two individuals as they ran away from the apartment. Both males were slim in build, and one was bare-chested and had a white T-shirt hanging from his shoulder. The other male was wearing a brown and white striped shirt. She moved toward the male with the white T-shirt, who was not the defendant, and he kicked her as she grabbed him by his jeans. As the perpetrators fled the area, Singh called 911 to report the incident. While Singh was waiting for the police to respond, the two males circled back and argued with her. She could clearly see their faces, and she knew they were the same individuals who had been in her apartment because they were wearing the same clothing. They left again, before the

police arrived, and subsequently drove past her in a gray, four door Nissan Maxima with a smashed front end. Singh's sister was able to see the Connecticut license plate number of their vehicle.

In the meantime, Singh's son brought Singh's mother downstairs from the apartment. Singh's mother had been unaware of the entry even though she had been present during the entire incident. Officer John Praleikas of the Waterbury police department then arrived, and Singh went upstairs to her apartment with him. She noticed several garbage bags filled with her possessions. Her jewelry box was located on the porch outdoors, but her jewelry had been taken. Praleikas determined that the perpetrators had gained entry by prying a screen window from its frame and forcing open a window into the bedroom. Singh gave a statement to Praleikas, including a description of the two males. Singh's sister gave a description of the vehicle and the license plate number to Praleikas, who forwarded the information to fellow officers over his police radio. Praleikas also ran the license plate number through the National Crime Information Center system databases, and obtained the address of the vehicle's registered owner on Pond Street in Waterbury. The vehicle was registered to Somdat Narain, the defendant's brother.

Praleikas drove to the address on Pond Street, which was located a short distance from Lounsbury Street. When he arrived, he observed the subject vehicle in a side driveway. After requesting backup officers, Praleikas spoke with the defendant, the defendant's brother and one female at that location. The males matched the description of the perpetrators given by Singh and her sister. The female was Premwattie Ramdat, Singh's seventeen year old daughter. When Praleikas found a black trash bag filled with jewelry in the trunk of the subject vehicle, he contacted Singh and requested that she come to the Pond Street address for a possible

identification of the perpetrators. Shortly thereafter, Singh arrived and positively identified the defendant and his brother as the two men who had broken into her apartment. She identified Ramdat as her daughter, whom Singh had not seen since September 5, 2007, when Ramdat left home to live in New York. Praleikas showed Singh the contents of the bag from the trunk, and she confirmed that it was her jewelry from the apartment.

The defendant was arrested and taken to the Waterbury police department. The following morning, the defendant was advised of his *Miranda*[2] rights by Detective Robert Liquindoli of the Waterbury police department. Although the defendant was not willing to give a written statement, he indicated that he was willing to talk about the incident that led to the charged offenses. The defendant stated that his brother and Ramdat, his brother's girlfriend, arrived from New York to visit him on July 4, 2008. During the visit, Ramdat mentioned that she and her mother, Singh, did not get along. She also informed them that her mother kept a large quantity of jewelry at her apartment. At some point during the conversation, the three of them decided that they would "steal the jewelry" from Singh's residence. According to Liquindoli, the defendant stated that "[he], his brother and his brother's girlfriend broke into the brother's girlfriend's mother's home and robbed some jewelry."

Shortly before jury selection, the defendant filed a motion in limine seeking to preclude the state from presenting any evidence relative to the value of the jewelry taken from Singh's apartment. The defendant claimed that the subject jewelry, formerly in the possession of the Waterbury police department, had been

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

returned to Singh and that he had not stipulated to the admission of secondary evidence as to its value. The defendant argued that he would have retained an expert appraiser to assess the value of the jewelry and that he had been deprived of his due process right to present a defense. After a hearing held on December 16, 2009, the trial court denied the defendant's motion.

During a four day trial, Singh testified as to the value of the jewelry. Additionally, a photograph of the plastic bag containing the jewelry and photographs of selected pieces of the stolen jewelry were admitted into evidence as exhibits. After the jury reached its verdict, which was accepted by the court, the defendant was sentenced to two years of incarceration, execution suspended, and two years of conditional discharge. This appeal followed.

I

The defendant first claims that there was insufficient evidence to support his conviction of the crimes of conspiracy to commit burglary in the first degree and conspiracy to commit burglary in the second degree. Specifically, he argues that the state failed to prove beyond a reasonable doubt that a conspirator *unlawfully entered* Singh's apartment, which is an element of the crime of burglary. According to the defendant, the evidence demonstrated that Ramdat and the defendant's brother were the two individuals who entered Singh's apartment. Because Ramdat is the daughter of Singh and was a minor at the time of the incident, the defendant argues that the mother's residence was also Ramdat's legal residence and that the state failed to prove that Ramdat did not have the right to enter and invite others into that residence.

"We apply a two part test in reviewing sufficiency of the evidence claims. First, we construe the evidence in

the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jennings*, 125 Conn. App. 801, 805–806, 9 A.3d 446 (2011).

To establish the crime of conspiracy under § 53a-48, the state was required to prove that there was an agreement between two or more persons to engage in conduct constituting a crime and that one of the conspirators committed an overt act in furtherance of the crime agreed upon. Proof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense. See *State* v. *Douglas*, 126 Conn. App. 192, 202–203, 11 A.3d 699, cert. denied, 300 Conn. 926, 15 A.3d 628 (2011). The defendant claims that to convict him of the crimes of burglary in the first degree and burglary in the second degree, as the commission of those crimes was alleged in the state's information, the state bore the burden of proving beyond a reasonable doubt that he entered or remained unlawfully in a dwelling. The defendant argues that the state failed to demonstrate

an agreement to intentionally enter Singh's apartment unlawfully because Ramdat, by virtue of being the minor daughter of Singh, could legally enter her mother's residence. We are not persuaded.

The defendant's argument relies on the premise that it was Ramdat and her boyfriend, the defendant's brother, who entered Singh's apartment. The jury, however, reasonably could have found that the defendant and his brother had broken into the apartment. Singh testified that she saw two males exit from her window on the second floor and that she saw them clearly as they fled the scene.[3] Further, the defendant stated to Linquindoli that he, his brother and Ramdat decided to "steal" the jewelry and that they "broke into" Singh's apartment. According to Praleikas, they entered the apartment not through a door but by prying a screen window from its frame and forcing open a window into the bedroom. This conduct, contrary to the defendant's argument, reasonably could lead the jury to conclude that the entry by the perpetrators was believed to be, and was indeed, unlawful.

The defendant cites no case law supporting his position that a runaway minor lawfully can allow other individuals to forcibly break into the dwelling of his or her parent for the purpose of committing a planned crime. "[I]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge

---

[3] The defendant argues that the jury did not believe that testimony because it "returned verdicts of not guilty on all substantive burglary and larceny counts." This court, however, must view the evidence in the light most favorable to sustaining the verdict. *State* v. *Jennings*, supra, 125 Conn. App. 805. Moreover, the defendant's argument fails even if the jury's verdicts on the burglary and larceny charges could be considered factually inconsistent with its verdicts on the conspiracy charges. "[A] factually inconsistent verdict will not be overturned on appeal." *State* v. *Ramirez*, 292 Conn. 586, 590, 973 A.2d 1251 (2009), aff'g 107 Conn. App. 51, 943 A.2d 1138 (2008).

or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Fauntleroy*, 101 Conn. App. 144, 153, 921 A.2d 622 (2007). On the basis of the evidence and the reasonable inferences drawn therefrom, we conclude that there was sufficient evidence to support the defendant's conviction of conspiracy to commit burglary in the first degree and conspiracy to commit burglary in the second degree.

## II

The defendant's next claim is that the court improperly precluded him from cross-examining Singh about Ramdat's place of residence. Defense counsel asked Singh whether Ramdat was still a resident of her home on July 4, 2008. The prosecutor objected, on the grounds that it was beyond the scope of direct examination and not relevant, and the objection was sustained by the court. The defendant argues that he intended to elicit testimony that Ramdat "was a legal resident of the dwelling; she could invite people inside as a legal resident, vitiating the state's claim that there was an unlawful entry." As a result of the court's having precluded this line of questioning, the defendant claims that he was deprived of his constitutional right to present a defense.

"It is well established that [t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 634, 1 A.3d 1051 (2010). "[T]he determination of whether a matter is relevant to a material issue [in the proceeding] . . . rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Wright*, 273 Conn. 418, 424–25, 870 A.2d 1039 (2005).

In the present case, defense counsel asked Singh whether Ramdat was still a resident of Singh's apartment when Ramdat came back to Waterbury on July 4, 2008. Singh responded: "No." The prosecutor objected: "Objection. Beyond the scope, relevance, and I—I've had discussions with counsel about this, that I would like to have the jury excused, please." The jury was excused, and counsel presented their arguments to the court. During that discussion, the prosecutor maintained that even if Ramdat could invite another person into her mother's apartment, she could not legally invite that other person inside for the purpose of committing a crime. Defense counsel responded: "And I agree with that, Your Honor. But that's not the question that was asked of this witness. The question was simply whether she has the right to invite people in. If the invitation was for the purpose of committing a crime, I agree that she doesn't have the authority to do that."

On appeal, the defendant claims that, through his cross-examination of Singh, he wanted to establish that Ramdat was a legal resident of Singh's apartment. The defendant argues that as a legal resident, Ramdat could invite people into her residence and the state would be unable to prove an unlawful entry. Thus, the defendant's position, as articulated to the court, was dependent upon Ramdat's being a legal resident of that apartment. The defendant's argument fails for several reasons.

Although the prosecutor objected to defense counsel's question as to Ramdat's legal residence, Singh already had answered the question. She stated that Ramdat was not a resident of her apartment as of July 4, 2008. After the court ruled, sustaining the state's objection, the jury returned to the courtroom, and the court indicated that the objection had been sustained. The state never moved to strike Singh's response, and the court did not do so.

Moreover, Singh previously had indicated, during direct examination, that Ramdat did not reside with her. The prosecutor asked: "And was [Ramdat] living with you on July 4 of 2008?" Singh responded: "No." The prosecutor then asked: "When was the last time before that date that you had seen her?" Singh responded: "September 5, 2007." Singh's responses, therefore, unequivocally established that Ramdat was not a resident of her mother's apartment on July 4, 2008. Further, after defense counsel conceded that Ramdat did not have the authority to invite other people into her mother's apartment for the purpose of committing a crime, the court immediately sustained the state's objection because the line of questioning was beyond the scope of direct examination and not relevant: "At this point in time, I don't see it [as] relevant. . . . I have not heard any evidence at this point that [Ramdat] was living at the residence or authorized to invite anyone into the residence . . . ." The court also stated,

however, that should the defendant rely on a defense necessitating such testimony, Singh needed to remain available so that the defendant could call her in his case-in-chief.[4]

For the foregoing reasons, we conclude that the defendant has failed to demonstrate that the court abused its discretion by precluding that line of questioning during his cross-examination of Singh. "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless such a proper foundation is established, the evidence . . . is irrelevant." (Internal quotation marks omitted.) *State v. Stephenson,* 131 Conn. App. 510, 528, 27 A.3d 41 (2011). Here, we cannot conclude that the court improperly determined that the defendant failed to establish the relevance of the offered testimony. Accordingly, the court's decision to preclude it on that basis did not violate his constitutional right to present a defense.

## III

The defendant's final claim is that the court improperly denied his motion in limine to preclude the state from presenting evidence as to the value of Singh's stolen jewelry. Specifically, he argues that because the jewelry was returned to Singh before he had the opportunity to have an expert appraise its value, he was deprived of his constitutional right to present a defense. We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. After Praleikas discovered Singh's jewelry in the trunk

---

[4] The defendant's argument that the court improperly failed to allow him the opportunity to question Singh outside the presence of the jury likewise fails. As previously discussed, the defendant conceded that Ramdat could not invite other people into her mother's apartment for the purpose of committing a crime. Accordingly, the court reasonably could have concluded that that concession rendered the proposed line of questioning irrelevant.

of Somdat Narain's vehicle, the jewelry was bagged and labeled by police officials and kept as evidence at police headquarters. The jewelry was returned to Singh, however, when the cases against the defendant's co-conspirators were resolved. The defendant claims that he was not notified of any request to return the jewelry and that he did not stipulate to the use of secondary evidence to establish its value. See General Statutes § 54-36a (b).[5] On that basis, shortly before jury selection, the defendant filed his motion in limine to preclude the state from presenting any evidence as to the value of the stolen jewelry. The court denied the motion, concluding that the submission of secondary evidence would go to the weight and not the admissibility of such evidence, and that the defendant would have "every opportunity to cross-examine and challenge any value claimed by the state."

At trial, the state questioned Singh as to the value of her jewelry, and it submitted into evidence one photograph of the garbage bag filled with Singh's jewelry and

---

[5] General Statutes § 54-36a (b) (2) provides in relevant part: "If the seized property is stolen property, within ten days of the seizure, the law enforcement agency seizing the property shall notify the owner of the property if known . . . and, on a form prescribed by the Office of the Chief Court Administrator, advise the owner of such owner's rights concerning the property and the location of the property. Such written notice shall include a request form for the return of the property. The owner may request the return of the property by filing such request form with such law enforcement agency, and upon receipt of such request, the law enforcement agency shall forward it to the clerk of the court for the geographical area in which the criminal offense is alleged to have been committed. The clerk of the court shall notify the defendant or defendants of the request to return the property. The court shall order the return of the property within thirty days of the date of filing such return request by the owner, except that for good cause shown, the court may order retention of the property for a period to be determined by the court. Any secondary evidence of the identity, description or value of such property shall be admissible in evidence against such defendant in the trial of such case. The fact that the evidence is secondary in nature may be shown to affect the weight of such evidence, but not to affect its admissibility. . . ."

three photographs of selected pieces of that jewelry. Singh described several pieces of the stolen jewelry, testifying as to when they were purchased and the price that she paid for them. She also testified that she had a bracelet custom made for her in New York that was worth more than $500. Singh estimated the total value of the stolen jewelry to be more than $10,000, although she acknowledged that she had told Praleikas on July 4, 2008, that the jewelry was worth more than $5000. During cross-examination, defense counsel questioned her regarding the discrepancy between her estimated value of the jewelry at the time of the incident and at trial. He asked no questions pertaining to the purchase price of the various pieces of jewelry or her description of select diamond bracelets and gold anklets. The defendant did not challenge Singh's competency to testify as to the value of her jewelry, nor did he challenge the lower estimate of $5000 as being excessive.

In order for the defendant to be convicted of conspiracy to commit larceny in the third degree, the state had to prove beyond a reasonable doubt that the value of the stolen property exceeded $1000. See General Statutes (Rev. to 2007) § 53a-124 (a) (2). Because the state did not present the original pieces of the stolen jewelry, the defendant claims that he "could not refute the value element of the charged crime by presenting credible, reliable testimony of an independent appraisal." The defendant argues that the court should have precluded the admission of secondary evidence, even though that would have prevented the state from establishing one of the elements of the charged offense, because the procedure set forth in § 54-36a (b) had not been followed.

There is no Connecticut case law that is completely on point with the case at bar. There is, however, a case that is instructive. In *State* v. *Stephenson*, supra, 131 Conn. App. 510, the defendant filed a motion to dismiss

the charges against him, claiming that the state had deprived him of a fair trial and due process by returning merchandise alleged to have been stolen by him to the stores from which it had been taken. A photograph of the merchandise, consisting of clothing and eyeglasses, had been taken by the police department prior to its return. The defendant argued that the state intentionally had disposed of that evidence and that it was critical to his defense. The state responded that it properly had returned the stolen merchandise pursuant to § 54-36a. The defendant countered that the state did not comply with the provisions of that statute, and, therefore, the return was not proper. The trial court denied the defendant's motion to dismiss and the case proceeded to trial, resulting in the defendant's conviction.

This court upheld the trial court's determination. We concluded that even if the merchandise had not been properly returned pursuant to the statute, the defendant nevertheless failed to establish that his constitutional rights had been violated. We noted that he had the ability, through cross-examination and extrinsic evidence, to make the points argued in his motion to dismiss regarding the unavailability of the evidence and that he had not shown that he suffered prejudice by the return of the items. Id., 525–26.

In the present case, there is no claim that the state concealed, suppressed, lost or destroyed Singh's jewelry. "Only an intentional or deliberate suppression of evidence is a per se violation of due process sufficient to reverse or nullify a conviction." *State* v. *Green*, 194 Conn. 258, 264 n.6, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); *State* v. *Davis*, 10 Conn. App. 130, 133, 521 A.2d 1051 (1987). The evidence inadvertently was returned to its owner when the cases against the defendant's co-conspirators were resolved. Although the defendant's case

had been pending since July, 2008, no motion addressed to the evidence was filed until November, 2009.

Further, Singh was a state's witness, and there is no indication that the subject jewelry could not have been subpoenaed for trial.[6] The defendant did not argue that Singh was not competent to testify as to the value of her property or that the photographs of the jewelry, as admitted into evidence, were not accurate representations of the stolen pieces. When the court denied the defendant's motion in limine to preclude the use of secondary evidence, the court stated that the defendant would have "every opportunity to cross-examine and challenge any value claimed by the state." Despite this opportunity, the defendant never challenged Singh's testimony at trial with respect to the price she paid for the jewelry or her description of the diamond and gold bracelets and anklets. He did point out the discrepancy in her estimation of its value, which had been approximately $5000 at the time of the incident and $10,000 at trial. Significantly, however, he never challenged the lower estimate of $5000, and the state only had the burden of proving that the value of the stolen jewelry was more than $1000.

Given these factors, we cannot conclude that the defendant has established any prejudice by the return of the jewelry or that he has been harmed by the lack of an opportunity to have an independent appraisal of the jewelry. Accordingly, the court did not improperly deny the defendant's motion in limine to preclude the state from presenting evidence as to the value of the stolen jewelry.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] In fact, in the defendant's brief on appeal, he states that "[t]he state enjoyed continuing access to [Singh's] jewelry."