14-1310-pr
*Stephenson v. Connecticut*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand sixteen.

Present:

> PIERRE N. LEVAL,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

JOSEPH STEPHENSON,

> *Petitioner-Appellant,*

v.                                                            14-1310-pr

STATE OF CONNECTICUT,

> *Respondent-Appellee.*

_____

For Petitioner-Appellant:          SALLY WASSERMAN, New York, N.Y.

For Respondent-Appellee:          TAMARA GROSSO, Assistant State's Attorney, Office of the Chief State's Attorney, Rocky Hill, Conn.

1

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the order of the District Court is **VACATED** and the case **REMANDED** for further proceedings consistent with this order.

Before the United States District Court for the District of Connecticut (Chatigny, *J.*), Petitioner-Appellant Joseph Stephenson ("Stephenson") moved to amend his 28 U.S.C. § 2254 petition to add claims of ineffective assistance of counsel, improper dismissal of a juror, error in sentencing, and vindictive prosecution. Stephenson also argued that he was actually innocent of the most serious crime for which the jury in Connecticut convicted him, robbery in the third degree in violation of Connecticut General Statutes § 53a-136. Conn. Gen. Stat. Ann. § 53a-133 (West). In support of this latter claim, Stephenson pointed to a notarized letter signed by the principal witness in the case against him, Donovan Sinclair, which Sinclair submitted to the Connecticut trial court before sentencing, but months after the jury reached its verdict. Stephenson argued that the letter, in either clarifying or recanting some of Sinclair's prior testimony, cast doubt on whether any reasonable juror presented with it could find that Stephenson used or threatened force in furtherance of larceny, so as to make out a claim of actual innocence.[1] *See Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) (observing that such a claim of actual innocence, if successfully made, permits a federal court to address claims made in a habeas petition that would otherwise be procedurally barred). The District Court denied Stephenson's motion to amend, finding that amendment would be futile as his claims would be procedurally barred for failure to exhaust state remedies, and that Stephenson "ha[d] not shown

---

[1] To prove Stephenson committed robbery in the third degree, Connecticut had to show, beyond a reasonable doubt, both that Stephenson committed larceny and that "in the course of committing a larceny, [Stephenson] use[d] or threaten[ed] the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or the retention thereof immediately after the taking . . . ." Conn. Gen. Stat. Ann. § 53a-133 (West).

2

that a constitutional violation ha[d] probably resulted in the conviction of one who is actually innocent." A 37. On August 13, 2014, we granted Stephenson a certificate of appealability limited to the question "whether the district court erred in denying Petitioner's motion to amend . . . in which Petitioner alleged that he was actually innocent of robbery in the third degree such that the court could overlook his failure to exhaust his claims . . . ." We assume the parties' familiarity with the underlying facts, procedural history, and issue on appeal.

\* \* \*

We review a district court's denial of leave to amend for abuse of discretion. *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). "Because the determination as to whether no reasonable juror would find a petitioner guilty beyond a reasonable doubt is a mixed question of law and fact, we review a district court's ultimate finding relating to actual innocence *de novo*." *Rivas*, 687 F.3d at 543 (quoting *Doe v. Menefee*, 391 F.3d 147, 163 (2d Cir. 2004) (alterations omitted)).

For a petitioner to pass through the actual innocence "gateway," *Rivas*, 687 F.3d at 539, such that his claims, though procedurally barred, may nevertheless be heard by a federal court, he must present "a claim of actual innocence [that is] both 'credible' and 'compelling,'" *id.* at 541 (quoting *House v. Bell,* 547 U.S. 518, 521, 538 (2006)). "For the claim to be 'credible,' it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House,* 547 U.S. at 538). We

3

have previously noted that "a recanting victim presents a sympathetic scenario for a claim of actual innocence." *Doe*, 391 F.3d at 173.

At trial, Sinclair, a Macy's store security officer at the time of the purported robbery, testified as to what happened outside Macy's when Sinclair confronted Stephenson for shoplifting. Sinclair testified that, moments after he confronted Stephenson, Sinclair "was still trying to [restrain Stephenson] . . . . [T]hings were getting heated, argument, you know, a little pushing and shoving because [Stephenson] was still trying to walk away." Trial Transcript, Oct. 27, 2008, at 90, *Stephenson v. Connecticut*, No. 3:12-cv-1233 (RNC) (D. Conn. Mar. 31, 2014) (No. 78). After the prosecution rested its case, the trial judge relied on Sinclair's description of "pushing and shoving" in denying Stephenson's motion to dismiss the charge of robbery in the third degree as a matter of law. Trial Transcript, Oct. 29, 2008, at 59, *Stephenson v. Connecticut*, No. 3:12-cv-1233 (RNC) (D. Conn. Mar. 31, 2014) (No. 78). On direct appeal, the Connecticut appellate court further cited this testimony in finding that there was sufficient evidence to support the jury's verdict. *See State v. Stephenson*, 131 Conn. App. 510, 518 (2011) (observing that "Sinclair testified that there was 'a little pushing and shoving'" and thus concluding that "[c]ontrary to the defendant's claim [of insufficient evidence to support the verdict], the jury was permitted to infer, on the basis of Sinclair's testimony, that the defendant was pushing and shoving in an effort to prevent and overcome resistance to the taking of the merchandise and to the retention thereof").[2]

In a notarized, unsworn letter submitted to the trial court on the eve of sentencing, months after the jury rendered its verdict, Sinclair stated that "I realize[d] from [a newspaper]

---

[2] We note that the "the gateway standard is 'by no means equivalent to the standard . . . that governs review of claims of insufficient evidence.'" *Rivas*, 687 F.3d at 542 (quoting *Schlup*, 513 U.S. at 330)). Indeed, it is easier for a petitioner to meet the gateway standard than to win on a sufficiency challenge, *see id.*, and the latter does not permit review of evidence not presented at trial. We describe these sufficiency challenges only to underline that the particular testimony in question was at least colorably dispositive to the conviction.

4

article that [Stephenson] was charged for robbery because I said that there was some pushing and shoving. I admit now that the man did not touch me in any way at all. In fact it was I that pushed and shoved him against the fence across from the store. He only pulled his hand away so I could not handcuff him properly." Application for a Writ of Habeas Corpus at 71, *Stephenson v. Connecticut*, No. 3:12-cv-1233 (RNC) (D. Conn. Mar. 31, 2014) (No. 1). Sinclair further explained, "I made a slip of the tongue when I said that there was 'a little pushing and shoving.' My intention was to convey the fact that there was no fighting whatever and that it was a minor incident." *Id.* at 72. Sinclair also noted, "[Stephenson] gave me the [shopping] bag [containing shoplifted items] when I asked for it and I thought the Jury would understand that there was only arguing involved and no force whatsoever." *Id.* at 71.

It is indisputable that Sinclair's testimony at trial that there was "pushing and shoving" was significant to the prosecution's case that Stephenson's actions satisfied the force requirement for a conviction of robbery in the third degree. Further, the location of the shopping bag at any given time could also be relevant to whether any reasonable juror could find that, if Stephenson indeed used force, that force was in furtherance of the larceny (a necessary element of robbery) rather than, in the alternative, merely in furtherance of escape. *See State v. Preston*, 248 Conn. 472, 479-83 (1999) (noting that it could be highly relevant to the purpose for which force was indisputably used whether a fleeing larcenist still had the stolen items upon him when he engaged in a physical altercation with a store clerk, or whether, instead, the items had fallen out of his pocket and onto the ground). On the other hand, the letter – notarized, but unsworn – must first be found credible for it to be relevant to the question whether or not, in concert with the other evidence presented to the jury, it presents a compelling case of innocence. The District Court, in finding that Stephenson "ha[d] not shown that a constitutional violation ha[d]

5

probably resulted in the conviction of one who is actually innocent," A 37, did not address the Sinclair letter, offered no legal or factual explanation for its determination beyond its conclusion, and made no credibility determinations (nor conducted any further investigation, such as through a hearing). Given the conclusory nature of this determination, and in light of the contents of the Sinclair letter, we are unable to defer to this determination on appeal. *Cf. House*, 547 U.S. at 540 (observing that the fact that the Court was "uncertain about the basis for some of the [d]istrict [c]ourt's conclusions . . . weaken[ed its] reliance on [the district court's] determinations").

In the face of evidence of actual innocence sufficient to make a claim colorable (though not necessarily successful), we have on multiple occasions remanded a case to the district court to make specific factual findings on the record as to the viability of the claim. *See Doe v. Menefee*, 49 Fed. App'x 340, 341-2 (2d Cir. 2002) (summary order) ("In this case, Doe has presented evidence, the affidavit of his alleged victim, which might well lead a reasonable juror to find him not guilty. However, the respondent also has presented extensive evidence undermining the victim's affidavit. . . . [Thus,] we vacate the district court's judgment and remand for the district court to decide as a matter of fact whether Doe has presented a credible claim of actual innocence."); *see also Rivas v. Fischer*, 294 Fed. App'x 677, 679 (2d Cir. 2008) (summary order) ("If the District Court determines that Rivas has not satisfied the due diligence requirements of 28 U.S.C. § 2244(d)(1)(D), the District Court should then make specific findings as to whether Rivas has established a credible claim of actual innocence . . . . If conducting this inquiry, the District Court may wish to examine the 'likely credibility of the affiants,' *Schlup v. Delo,* 513 U.S. 298, 332 (1995), and other witnesses at Rivas's trial, and the relative strength of the State's case against Rivas in light of any credibility determinations that the District Court sees fit to

make.").   In accordance with this practice, we vacate the District Court's denial of Stephenson's motion to amend and remand to the District Court to make specific findings as to whether Stephenson has established a credible and compelling claim of actual innocence.   We further observe that it may be appropriate for the District Court to conduct a hearing if it deems further investigation necessary to properly ascertain the motives and credibility of Sinclair, identify, explain, and weigh inconsistencies (if any) between the letter and Sinclair's trial testimony, and otherwise analyze and weigh the merits of Stephenson's claim.   *Cf. Doe*, 391 F.3d at 155 ("On remand, the district court conducted a hearing on the actual innocence issue, after which it determined that Doe had 'established his innocence by a preponderance of the credible evidence.' The court heard testimony from [the primary witnesses at trial] on the issue of actual innocence . . . ."); *cf. also id.* at 168 (identifying and analyzing inconsistencies between a witness's testimony at the innocence hearing and his prior, inconsistent testimony, and then carefully analyzing the witness's motives at each venue to determine whether the new testimony was or was not credible).

If the District Court concludes that Stephenson has indeed made a credible and compelling showing of actual innocence, it should then consider, in the first instance, whether he has advanced any "legitimate constitutional claim[s]," *Rivas*, 687 F.3d at 540, and, if it finds he has done so, should permit Stephenson to amend his petition accordingly.

Pursuant to the Criminal Justice Act, Stephenson's Criminal Justice Act attorney will continue to represent him on remand.   *See* Amended Plan to Implement the Criminal Justice Act of 1964 (as amended June 18, 2010) at § IX(G) ("The CJA attorney must continue to represent a CJA client in the district court upon remand unless relieved.").

Accordingly, we **VACATE** the District Court's denial of the Petitioner's motion to amend and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk