******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOSEPH STEPHENSON *v.* COMMISSIONER OF CORRECTION
## (AC 41812)

Alvord, Devlin and Norcott, Js.

*Syllabus*

The petitioner, who previously had pleaded guilty to larceny in the fifth degree and larceny in the sixth degree, sought a writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance by failing to accurately advise him about the consequences of pleading guilty under federal immigration law. The petitioner was ordered removed from the United States on the basis of the two larceny convictions as well as a prior conviction of robbery. The habeas court rendered judgment dismissing the habeas petition as moot, concluding that it could provide no practical relief because the petitioner did not challenge the robbery conviction in his amended habeas petition and that conviction was a separate basis for the petitioner's ordered removal. Thereafter, the habeas court granted the petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The trial court did not improperly dismiss the amended habeas petition as moot because no practical relief from his ordered removal could be afforded to the petitioner; a decision on the merits challenging the larceny convictions could not provide the petitioner relief from his ordered removal because the petitioner's robbery conviction, not challenged in the amended habeas petition, serves as an independent basis for the petitioner's ordered removal.

2. The trial court improperly dismissed the amended habeas petition as moot because the larceny convictions give rise to a reasonable possibility of prejudicial collateral consequences as a matter of law; the petitioner has not yet been removed from the United States and additional sources of prejudicial consequences apart from removal and barred reentry are a reasonable possibility in connection with the petitioner's potential future involvement with the criminal justice system, and, accordingly, the judgment was reversed and a new habeas trial was ordered.

3. This court declined to review the petitioner's ineffective assistance of counsel claim; the habeas court did not rule on the merits and there were existing factual disputes that could not be resolved on appeal.

Argued October 16, 2019—officially released April 28, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *new trial*.

*Vishal K. Garg*, for the appellant (petitioner.)

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, *Juliana Waltersdorff*, assistant state's attorney, and *Michael Proto*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Joseph Stephenson, appeals from the judgment of the habeas court dismissing, as moot, his petition for a writ of habeas corpus. The court dismissed the petition, which alleged that the petitioner's trial counsel had rendered ineffective assistance by inaccurately advising him about the consequences of pleading guilty under federal immigration law, because the petitioner's ordered removal from the United States rests, in part, on a conviction that he did not challenge in his habeas petition. On appeal, the petitioner claims that the court improperly dismissed his petition as moot, arguing that (1) "deportation—not a deportation order—is the triggering event that renders a case moot, and that a case does not become moot until [the] petitioner is actually physically removed from the United States," and (2) "collateral consequences other than immigration exist and will continue to exist until the petitioner's actual physical removal from the United States." We agree with the petitioner's second argument and, thus, reverse the judgment of the court.[1]

The following undisputed facts and procedural history are relevant to this appeal. The petitioner is a citizen of Jamaica, which is his country of origin. On or about December 20, 1985, the petitioner was admitted to the United States under nonimmigrant B-2 status. On February 14, 2000, the petitioner's immigration status was changed to that of a lawful permanent resident.

On March 5, 2013, the petitioner pleaded guilty to charges of larceny in the fifth degree, in violation of General Statutes § 53a-125a in one docket, and larceny in the sixth degree, in violation of General Statutes § 53a-125b in a second docket (larceny convictions).[2] On April 9, 2013, the petitioner was sentenced to two concurrent 364 day terms of imprisonment on the larceny convictions.[3] The concurrent 364 day sentences were negotiated by James Lamontagne, the petitioner's counsel, and the prosecutor in an effort by Attorney Lamontagne to alleviate any adverse consequences that the petitioner might encounter under federal immigration law as a result of the larceny convictions.

On July 9, 2013, the United States Department of Homeland Security (department) charged the petitioner "as removable pursuant to [the Immigration and Nationality Act, 8 U.S.C. § 1227 (a) (2) (A) (ii) (2012)] based on [the] larceny convictions." Subsequently, on January 21, 2014, the department further charged the petitioner "as removable pursuant to [8 U.S.C. § 1227 (a) (2) (A) (iii) (2012)], as an aggravated felon" for a prior conviction of robbery in the third degree (robbery conviction).[4] In a decision dated July 22, 2014, the immigration judge concluded that the larceny convictions constituted crimes of moral turpitude under 8 U.S.C. § 1227

(a) (2) (A) (ii), and that the robbery conviction was an aggravated felony under 8 U.S.C. § 1227 (a) (2) (A) (iii). On the basis of these conclusions, the immigration judge ordered that the petitioner be removed from the United States to Jamaica. On December 15, 2014, the Board of Immigration Appeals (board) "affirm[ed] that the [petitioner] ha[d] been convicted of an aggravated felony for the reasons given in the [i]mmigration [j]udge's decision" and, accordingly, dismissed his appeal. Because the board affirmed the immigration judge's determination that the robbery conviction was an aggravated felony, it concluded that it "need not address whether the [petitioner] [w]as also . . . convicted of crimes involving moral turpitude."

On September 25, 2013, while in custody serving his concurrent 364 day sentences and shortly after the department charged him as removable, the petitioner filed a self-represented petition for a writ of habeas corpus seeking to vacate the larceny convictions.[5] On January 2, 2018, the petitioner, now represented by counsel, filed an amended petition for a writ of habeas corpus (operative petition). In the operative petition, the petitioner alleged that Attorney Lamontagne rendered ineffective assistance of counsel. Specifically, the petitioner alleged that Attorney Lamontagne's failure to accurately advise him that pleading guilty to the larceny charges against him would make him "deportable, removable, and inadmissible for reentry under federal immigration law," constituted deficient performance.[6] The petitioner further alleged that, but for Lamontagne's deficient performance, "[t]here [wa]s a reasonable probability that . . . [he] would not have entered a guilty plea."

On May 22, 2018, a trial on the operative petition was held before the court, *Sferrazza, J.* On May 29, 2018, Judge Sferrazza issued a memorandum of decision in which he held that the operative petition was moot. Judge Sferrazza found that the immigration judge had concluded that the robbery conviction constituted an aggravated felony and had ordered the petitioner's removal, in part, on that basis. Judge Sferrazza found that the petitioner did not challenge the robbery conviction in the operative petition. He further found that, on appeal, the board affirmed both the immigration judge's aggravated felony conclusion and order of removal. Accordingly, Judge Sferrazza concluded that his adjudication of the petitioner's claim "can provide no practical benefit to [him] because the mandated removal order, affirmed on appeal, is premised on an entirely different conviction for an aggravated felony, apart from [the] larceny convictions" that were challenged in the operative petition.[7] The petitioner filed a petition for certification to appeal, which Judge Sferrazza granted. This appeal followed.

I

In his principal brief, the petitioner claims that the court improperly dismissed, as moot, the operative petition, alleging that Attorney Lamontagne provided ineffective assistance by inaccurately advising him about the consequences under federal immigration law of pleading guilty to his larceny charges, because (1) "a case does not become moot until [the] petitioner is actually physically removed from the United States," as opposed to being ordered removed, and (2) "collateral consequences other than immigration exist and will continue to exist until the petitioner's actual physical removal from the United States."[8]

With respect to his first argument, the petitioner asserts that by dismissing his claim, as moot, the court "improperly extended Connecticut's mootness jurisprudence." Specifically, the petitioner asserts that, under *State* v. *Aquino*, 279 Conn. 293, 901 A.2d 1194 (2006), a claim "challenging a conviction may be rendered moot once the person challenging the conviction has been deported from the United States," but that "[n]o . . . court . . . has extended the *Aquino* doctrine to conclude that mootness occurs before deportation." The petitioner further contends that, "[a]lthough there exists a separate basis for [his] removal, [he] is currently challenging the [robbery] conviction underlying that basis in a federal proceeding. Were [he] to be successful in that challenge, a decision vacating his larceny convictions would provide him with practical immigration relief. . . . Accordingly, there is a reasonable possibility that a favorable decision in this case would provide [him] with practical relief."[9] In response, the respondent, the Commissioner of Correction (commissioner), argues that, "[w]hether [the] petitioner has been deported due to the [robbery conviction], whether he will be once released from state incarceration, or whether deportation proceedings will commence hereafter, the fact remains that reversing the [larceny convictions] here will have no effect on deportability."

As to his second argument, the petitioner asserts that "[p]rior to being deported, [he] is likely to suffer a litany of collateral consequences that result from the [larceny] convictions," including adverse effects on his inmate level and eligibility for programs and parole while in the commissioner's custody, on his standing in the community, and in seeking future job opportunities. According to the petitioner, therefore, "these prejudicial collateral consequences would be alleviated in the event that the . . . larceny convictions were vacated." In response, the commissioner argues that, "given [the] petitioner's lengthy prior record, including his six prior larcenies, two prior adjudications as a persistent larceny offender and his robbery conviction . . . [he] cannot show a reasonable possibility that the [larceny convictions] here will have any measureable effect."

Following oral argument before this court, we

ordered, sua sponte, that the parties provide supplemental briefing to address the following questions: "(1) Whether the petition for a writ of habeas corpus is moot in light of *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 218 [177 A.3d 1144] (2018), which held that 'in the absence of evidence of a crime of moral turpitude *that would serve as a permanent bar from reentering this country*, we conclude that [the challenged conviction] gives rise to a reasonable possibility of prejudicial collateral consequences—namely, his deportation and a barrier to reentry.' . . . See also *Wala* v. *Mukasey*, 511 F.3d 102 (2d Cir. 2007) (holding that, under modified categorical approach, record of conviction did not necessarily support [board's] finding that petitioner had intent of *permanent* taking pursuant to Connecticut larceny statute, General Statutes § 53a-119, required to hold that petitioner had committed a crime involving moral turpitude). (2) Whether the nonimmigration collateral consequences identified in the petitioner's briefing to this court are cognizable under Connecticut law in light of the petitioner's circumstances?" (Emphasis in original.)

In response to the first question in our order for supplemental briefing, the petitioner directs our attention to *In re Walton*, Board of Immigration Appeals, File No. A041-657-485 (December 5, 2019), a decision recently issued by the board, which, according to the petitioner, "held that a full pardon of an aggravated felony from the . . . Board of Pardons and Paroles has the 'effect of an executive pardon' such that it may be used to terminate immigration proceedings and vacate a removal order." In light of this holding, the petitioner argues that, "[b]ecause any of [his] prior convictions—including the robbery conviction that serves as an alternate ground for [his] removal and inadmissibility—may be pardoned, there is a reasonable possibility that vacating the larceny convictions at issue in this case will afford [him] practical immigration relief." Thus, the petitioner contends, "this court cannot find evidence of any crimes 'that would serve as a permanent ban from reentering this country' . . . because the possibility of a pardon prevents this court from concluding that any of his prior convictions have the effect of a permanent ban." (Emphasis omitted.) With respect to the question of whether the robbery conviction is a crime involving moral turpitude that would bar the petitioner's reentry, the petitioner concedes the answer is yes, citing *Webster* v. *Mukasey*, 259 Fed. Appx. 375, 376 (2d Cir. 2008) ("[r]obbery is universally recognized as a crime involving moral turpitude"). The commissioner likewise argues that the robbery conviction is a crime involving moral turpitude that bars reentry and renders the operative petition moot.[10]

In response to the second question in our order for supplemental briefing, the petitioner argues that, "[u]ntil [a] habeas petitioner has actually been removed

from the United States, a habeas petitioner with a deportation order suffers the exact same nonimmigration collateral consequences as a habeas petitioner with no deportation order." Specifically, the petitioner argues that the larceny convictions could be weighed against him by the sentencing judge should he be convicted of the assault of public safety personnel charge that is currently pending against him. The commissioner argues that, "regardless of whether consequences from the [larceny convictions] might save a typical case from being moot, the unique rationale employed in immigration mootness cases should be recognized." The commissioner asserts that the "unique rationale employed in immigration mootness cases" is that "if a conviction is not the sole reason for adverse immigration consequences, such as deportation, denial of reentry or inability to obtain naturalization, an appeal is moot because reversal can provide no practical *immigration* relief." (Emphasis in original.) The commissioner argues that in order to recognize this unique rationale in immigration mootness cases, the focus should not be "on what collateral consequences might arise in the community, in employment or in state courts, but rather what consequences may arise in federal immigration matters."

A

In order to assess the relative arguments of the parties, it is necessary first to review the cases in which our Supreme Court has applied its mootness doctrine where prejudicial collateral consequences were alleged as a result of federal immigration law. We begin our review by setting forth axiomatic principles of law and the standard of review. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . The first factor relevant to a determination of justiciability—the requirement of an actual controversy—is premised upon the notion that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . . Moreover, [a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 204–205, 802 A.2d 74 (2002). "[A] case does not necessarily become moot by virtue of the fact that . . . due to a change in circumstances, relief from the actual injury is unavailable. . . . [A] controversy continues to exist, affording the court jurisdiction, if the actual injury

suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief. Although the facts and circumstances of each case raising this issue have differed, a common theme emerges upon review of those cases: whether the litigant demonstrated a basis upon which we could conclude that, under the circumstances, prejudicial collateral consequences are reasonably possible as a result of the alleged impropriety challenged on the appeal." Id., 205. "Because mootness implicates the court's subject matter jurisdiction, it raises a question of law subject to plenary review." (Internal quotation marks omitted.) *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 208. "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id., 218.

Our Supreme Court's seminal case considering mootness when consequences under federal immigration law are alleged is *State* v. *Aquino*, supra, 279 Conn. 293. In *Aquino*, the defendant was a "Guatemalan national who illegally entered the United States in 1986 and remained here as an illegal alien for the next seventeen years." (Internal quotation marks omitted.) Id., 295. After the defendant entered a guilty plea to multiple charges, he filed a motion in the trial court to withdraw his guilty plea claiming that his attorney had failed to advise him adequately about the consequences of that plea under federal immigration law. Id., 294. That motion was denied by the trial court, which judgment this court affirmed on appeal. Id., 294–95. The defendant appealed to our Supreme Court, which did not reach the merits of the appeal but, rather, dismissed the appeal as moot. Id., 295. The court noted that the defendant was removed while his appeal was pending before this court. Id., 298 and n.2. The court stated that "[its] careful review of the record reveals . . . that [the defendant] has never claimed and that the record contains no evidence, that his guilty plea in the present case was the sole reason for his deportation. . . . Thus, his illegal immigration status could have been the reason for his deportation." Id., 298 n.2. The court further stated that "[j]ust as there is no evidence in the record before us establishing the reason for the defendant's deportation . . . there is no evidence to suggest that, in the absence of the guilty plea, the defendant would be allowed to reenter this country or become a citizen." Id., 298–99 n.3. The court held that, "in the absence of any evidence that the defendant's guilty plea was the sole reason for his deportation, the defendant's appeal must be dismissed as moot," because, "[i]f [the deportation] was not the result of his guilty plea alone, then [the] court can grant no practical relief and any decision rendered by [the] court would be purely advisory." Id., 298.

In *State* v. *Jerzy G.*, 326 Conn. 206, 162 A.3d 692 (2017), our Supreme Court again assessed whether an

appeal was moot where the defendant was removed from the United States under federal immigration law during the pendency of the appeal. In *Jerzy G.*, the defendant, a citizen of Poland, entered the United States on a nonimmigrant B-2 visitor's visa that authorized him to remain for no longer than six months. Id., 209. Six years later, while still residing in the United States, the defendant was charged with sexual assault in the fourth degree. Id. The defendant applied for and was granted a pretrial diversionary program of accelerated rehabilitation. Id., 209–10. In accordance with the terms of the accelerated rehabilitation program, the defendant's case was continued for a two year period of probation that would end upon his successful completion of the program. Id., 210. Soon thereafter, however, the defendant was removed to Poland for remaining in the United States for a period longer than permitted, without authorization. Id. The defendant was notified by the department that he was prohibited from entering the United States for a period of ten years from his departure date. Id. The defendant's removal was brought to the attention of the trial court; the state sought a termination of his involvement in the accelerated rehabilitation program and the issuance of an order for his rearrest. Id., 210–11. The court found that the defendant had failed to complete the accelerated rehabilitation program, ordered his rearrest, and imposed as a condition of his release that he post a $5000 cash or surety bond. Id., 211. The defendant appealed to this court, which dismissed his appeal as moot, concluding that, "because [he] had produced no evidence to establish that, in the absence of the termination of accelerated rehabilitation, he would be permitted to reenter, visit, or naturalize, the purported collateral consequences were too conjectural." Id., 212.

The defendant appealed to our Supreme Court, which reversed this court's judgment. Id., 213. At the outset of its discussion, the court recognized that *State* v. *McElveen*, supra, 261 Conn. 198, set forth "the contours of the collateral consequences doctrine"; *State* v. *Jerzy G.*, supra, 326 Conn. 213; and recited its standard for determining whether prejudicial collateral consequences exist: "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing

court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." (Internal quotation marks omitted.) Id., 214-15.

The court made two additional points that are relevant to the present case. First, the court noted that, "[o]n its face, *Aquino* appears to be inconsistent with our collateral consequences jurisprudence," in that *Aquino* "makes no express reference to 'collateral consequences' or the 'reasonable possibility' standard set forth in *McElveen*." Id., 220. The court further noted that the suggestion in *Aquino* "that the defendant must produce evidence that he 'would be allowed' to reenter this country or become a citizen . . . seems to be in tension with [the *McElveen*] standard." (Citation omitted.) Id. The court, nevertheless, concluded that *Aquino* was consistent with *McElveen* because, in *Aquino*, the lack of evidence in the record to establish both the reason for the defendant's deportation and, conversely, the lack of any impediment aside from his guilty plea to preclude reentry resulted in the court in *Aquino* "apparently deem[ing] it impossible to determine whether, even if Aquino prevailed on appeal and his conviction was reversed, such a decision would improve his chances of reentry into the country or naturalization." Id., 221. According to the court in *Jerzy G.*, the decision in *Aquino* was supported by the "settled principle under both federal and Connecticut case law that, if a favorable decision necessarily could not afford the practical relief sought, the case is moot." Id.

Second, the court noted in *Jerzy G.*, the approach of the court in *McElveen* to the question of "whether there could be collateral consequences to overcome a charge of mootness even though granting relief would not remove similar prejudice remaining from other sources." Id., 216. Specifically, it explained that, in *McElveen*, the court concluded that there was a reasonable possibility of prejudicial collateral consequences arising from the defendant's violation of probation even though the defendant also had a conviction of attempted robbery in the third degree that created similar prejudicial collateral consequences. Id., 216–17; see also id., 217–18 ("[t]he proposition that the challenged decision did not have to be the sole source of possible prejudice found support in the court's earlier decision in *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765, 627 A.2d 367 (1993)"). In *Jerzy G.*, however, the court found *McElveen*'s principle inapplicable to cases in which a conviction, other than the one being challenged, results in a permanent ban of an individual's reentry into the United States because the alternative source of prejudice in such cases is "necessarily dispositive regarding the collateral injury . . . ." *State* v. *Jerzy G.*, supra, 326 Conn. 222.

The court in *Jerzy G.* then turned to its analysis

of the defendant's case. It first determined that the defendant's case was distinguishable from *Aquino* because, "[u]nlike *Aquino*, the record establishes the reason for the defendant's deportation—overstaying the term of his visitor visa without permission to do so" and "[t]he record also establishes that the ground for the defendant's removal does not permanently bar him from reentering the United States . . . ." Id., 223. On this basis, the court "conclude[d] that there is a reasonable possibility of prejudicial collateral consequences should the defendant seek to lawfully reenter the United States." Id. Specifically, the court stated a reasonable possibility of prejudicial collateral consequences existed in the following: (1) "the fact that there is a pending criminal charge against the defendant could be a significant factor in dissuading federal immigration officials from admitting him into the country, as such a decision would be discretionary"; (2) even if the defendant was permitted to enter the United States, he "would be subject to arrest upon entry"; (3) upon arrest, "[i]n order to obtain a release, he would have to post a $5000 bond"; and (4) "[i]f he was unable to [post bond], he would be imprisoned." Id., 223–24. Were the defendant to succeed on the merits of his appeal, however, those impediments could be removed. Id., 224.

In *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 198, our Supreme Court most recently addressed the issue of mootness in a case in which a petitioner alleged prejudicial collateral consequences on the basis of his removal from the United States under federal immigration law. In *St. Juste*, the petitioner pleaded guilty to assault in the second degree and possession of a sawed-off shotgun. Id., 202. In a petition for a writ of habeas corpus, the petitioner alleged that his trial counsel rendered ineffective assistance because he, inter alia, "(1) failed to educate himself about the immigration consequences of the pleas, (2) misadvised the petitioner with respect to the immigration consequences of the pleas, and (3) failed to meaningfully discuss with the petitioner what immigration consequences could . . . flow from the pleas." Id., 203. The petitioner further alleged that his guilty pleas "were not knowingly, voluntarily, and intelligently made because he made them under the mistaken belief that his conviction would not subject him to deportation." Id. Lastly, the petitioner alleged that as a result of his conviction of assault in the second degree and possession of a sawed-off shotgun, he had been ordered removed from this country. Id.

The habeas court denied the petition, and the petitioner appealed to this court. Id., 204. Prior to filing his appeal, however, the petitioner was removed to Haiti solely on the basis of his conviction of assault in the second degree. Id., 204 and n.7. Because of the petitioner's removal, this court did not reach the merits of his appeal but, instead, dismissed the appeal as moot. Id.,

205. In doing so, this court observed that, in addition to the conviction of assault in the second degree and possession of a sawed-off shotgun, the petitioner had a prior conviction of threatening in the second degree in violation of General Statutes (Rev. to 2005) § 53a-62 (a).[11] Id., 205. This court concluded that the petitioner's prior conviction of threatening in the second degree was a crime involving moral turpitude that would bar his reentry into the United States, irrespective of any relief provided on his challenged conviction, thereby rendering his appeal moot. Id., 206–207.

On appeal, our Supreme Court reversed this court's decision. Id., 208. The court noted that this court had applied the categorical approach, rather than the modified categorical approach,[12] to determine whether § 53a-62 (a) was a crime involving moral turpitude. Id., 207. The court determined that because § 53a-62 (a) is divisible, an application of the modified categorical approach was required. Id., 208. The court reasoned that, under Second Circuit precedent, whether a threatening offense under § 53a-62 (a) is a crime of moral turpitude depends on the mental state that must be proven to convict under it. Id., 212. If committed with an intentional mental state, it is a crime of moral turpitude, but, if committed with a reckless mental state, it is not a crime of moral turpitude unless combined with aggravating circumstances. See id., 213 ("crimes committed recklessly (where recklessness is defined as a *conscious* disregard of substantial and unjustifiable risk) have, *in certain aggravated circumstances*, been found to express a sufficiently corrupt mental state to constitute a [crime of moral turpitude]" (emphasis in original; internal quotation marks omitted)). The court deemed § 53a-62 (a) divisible because "[e]ach subdivision of § 53a-62 (a) requires proof of a different act or particular mental state. . . . [S]ubdivision (1) requires proof that an accused intentionally placed another person in fear of imminent serious physical injury, while subdivision (2) requires proof that an accused intentionally terrorized another person. Section 53a-62 (a) (3), however, requires proof that an accused recklessly disregarded the risk of causing terror in another person." Id., 212. The court further concluded that because § 53a-62 (a) (3) lacks aggravating circumstances, it is not a crime involving moral turpitude. Id., 214.

Having concluded that § 53a-62 (a) is divisible, the court proceeded to review the record of conviction pursuant to the modified categorical approach to determine under which subdivision the petitioner was convicted. Id., 216. Because the record of conviction was inconclusive, the court could not determine "that the petitioner was convicted of a crime of moral turpitude that is a permanent ban from reentering this country . . . ." (Internal quotation marks omitted.) Id., 218. The court summarized that, "in the absence of evidence of a crime of moral turpitude that would serve as a

permanent ban from reentering this country, we conclude that the petitioner's assault conviction, which he challenges in the present habeas action, gives rise to a reasonable possibility of prejudicial collateral consequences—namely, his deportation and a barrier to reentry." Id.

B

Informed by our review of *Aquino*, *Jerzy G.*, and *St. Juste*, we turn now to the petitioner's first argument that the court improperly dismissed the operative petition as moot because a reasonable possibility of prejudicial collateral consequences exists in connection with his ordered removal from the United States under federal immigration law. In *Aquino*, *Jerzy G.*, and *St. Juste*, the litigant had been removed from the United States by the time our Supreme Court considered the issue of mootness.[13] As such, the court's analysis turned on whether the litigant was barred from reentry into the United States.[14] In the present case, the petitioner has not yet been removed from the United States. Therefore, the mootness analysis focuses on whether a decision on the merits of the operative petition challenging the larceny convictions could provide the petitioner relief from his ordered removal—which is based on both the larceny convictions and the robbery conviction—or, if not, from a barrier to his future reentry. We conclude that a decision on the merits of the operative petition could not provide the petitioner with relief from either. Accordingly, we disagree with the petitioner's first argument.

The robbery conviction, which serves as one of the bases for the petitioner's ordered removal, was not challenged in the operative petition. Regardless of whether the petitioner succeeds on the merits of the operative petition challenging the larceny convictions, his ordered removal will stand because it is supported by the robbery conviction. Thus, a decision on the merits of the operative petition could provide no relief to the petitioner from his ordered removal.

Moreover, in his supplemental briefing, the petitioner concedes in accordance with Second Circuit precedent that the robbery conviction is a crime involving moral turpitude. See *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 210 ("decisions of the Second Circuit, while not binding upon this court, nevertheless carry particularly persuasive weight in the resolution of issues of federal law" (internal quotation marks omitted)). In *Webster* v. *Mukasey*, supra, 259 Fed. Appx. 375, the Second Circuit vacated a board decision denying a petitioner's application for a waiver of deportation. In doing so, however, the court acknowledged that "[i]t [was] unnecessary to remand for a decision on whether a conviction for second degree robbery under Connecticut law could form the basis of exclusion under [8 U.S.C. § 1182 (a)] as a crime involving moral turpitude"

because the board had "already determined that robbery is a crime involving moral turpitude that renders an alien inadmissible." Id., 376. Applying *Webster* to the present case, we conclude that, under 8 U.S.C. § 1182 (a) (2) (A) (i) (I), the robbery conviction is a crime involving moral turpitude and, thus, a permanent bar to reentry.[15] Because the robbery conviction was not challenged in the operative petition, independently supports the petitioner's ordered removal from the United States, and is a permanent bar to his reentry, a decision on the merits of the operative petition challenging the larceny convictions could provide no practical relief to the petitioner from the consequences he faces under federal immigration law.[16]

The petitioner argues that, in light of *In re Walton*, Board of Immigration Appeals, File No. A041-657-485 (December 5, 2019), "any of [his] prior convictions—including the robbery conviction that serves as an alternate ground for [his] removal and inadmissibility—may be pardoned, [and, thus,] there is a reasonable possibility that vacating the larceny convictions at issue in this case will afford [him] practical immigration relief." The petitioner has not identified in the record any pardon received from the Board of Pardons and Paroles. Accordingly, we conclude that this alleged source of prejudicial collateral consequence is wholly speculative. See *State* v. *Jerzy G.*, supra, 326 Conn. 214 ("the litigant must establish these consequences by more than mere conjecture" (internal quotation marks omitted)); *State* v. *Aquino*, supra, 279 Conn. 298 (citing lack of evidence in record to support mootness conclusion).[17]

C

We next consider the petitioner's argument that prejudicial collateral consequences exist while he is incarcerated on subsequent convictions and will continue until he is physically removed from the United States. Specifically, the petitioner argues that he has been charged with assault of public safety personnel in violation of General Statutes § 53a-167c, which, if he is convicted of that offense, will result in a judge's consideration of the larceny convictions, as a part of the petitioner's criminal history, during sentencing.[18] Because the larceny convictions give rise to a reasonable possibility of prejudicial collateral consequences as a matter of law, we conclude that the operative petition is not moot.

As previously set forth, "for a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. . . . The reviewing court therefore determines, based upon the particular situation, whether,

the prejudicial collateral consequences are reasonably possible." *State* v. *McElveen*, supra, 261 Conn. 208.

"It is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served." *Barlow* v. *Lopes*, 201 Conn. 103, 112, 513 A.2d 132 (1986); see also *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 572 n.4, 499 A.2d 1158 (1985); *State* v. *Scott*, 83 Conn. App. 724, 727, 851 A.2d 353 (2004). "[C]ollateral consequences of a criminal conviction are legion, involving possible heavier penalties in the event of future convictions . . . ." *Monsam* v. *Dearington*, 82 Conn. App. 451, 455, 844 A.2d 927 (2004). In holding that "collateral legal disabilities are imposed as a matter of law because of a criminal conviction"; *Shays* v. *Local Grievance Committee*, supra, 572 n.4; our Supreme Court has cited to persuasive federal precedent, which presumes collateral consequences from a criminal conviction. See *Pennsylvania* v. *Mimms*, 434 U.S. 106, 108 n.3, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) ("[C]ases have held that the possibility of a criminal defendant's suffering collateral legal consequences from a sentence already served permits him to have his claims reviewed here on the merits. . . . In any future state criminal proceedings against respondent, this conviction may be relevant to setting bail and length of sentence, and to the availability of probation." (Internal quotation marks omitted.)); *Sibron* v. *New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) ("in *Pollard* v. *United States*, 352 U.S. 354 [77 S. Ct. 481, 1 L. Ed. 2d 393 (1957)], the [c]ourt abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed").

In light of the foregoing precedent, we conclude that the larceny convictions give rise to a reasonable possibility of prejudicial collateral consequences as a matter of law. More specifically, in this case, the larceny convictions give rise to a reasonable possibility of prejudicial collateral consequences in connection with the petitioner's potential future involvement with the criminal justice system.[19] See *State* v. *McElveen*, supra, 261 Conn. 213 (finding reasonable possibility of prejudicial collateral consequences in connection with future involvement with criminal justice system arising from revocation of probation). Although we conclude that the petitioner's potential future involvement with the criminal justice system is sufficient to establish a reasonable possibility of prejudicial collateral consequences, we also note that the petitioner is currently facing a charge of assault of public safety personnel. *State* v. *Stephenson*, Superior Court, judicial district of Hartford, geographical area number thirteen, Docket No. H13W-CR-19-0191163-S; see also *Pennsylvania* v. *Mimms*, supra, 434 U.S. 108–109 n.3 ("[i]n view of the fact that respondent, having fully served his state sentence, is presently

incarcerated . . . we cannot say that [consideration of his conviction in future criminal proceedings is] unduly speculative even if a determination of mootness depended on a case-by-case analysis"). This pending criminal charge is useful to illustrate how the larceny convictions give rise to a reasonable possibility of prejudicial collateral consequences in connection with the criminal justice system. For example, were the petitioner to be convicted of the assault of public safety personnel charge, the larceny convictions, as part of his past criminal history, could be weighed against him by the judge in determining the appropriate sentence to impose. See General Statutes § 54-91a (a) ("any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense"); General Statutes § 54-91a (c) ("the probation officer shall promptly inquire into . . . the criminal record . . . of the defendant"); General Statutes § 54-91a (d) ("[i]n lieu of ordering a full presentence investigation, the court may order an abridged version of such investigation, which (1) shall contain . . . (F) the criminal record of the defendant"); see also *State* v. *Bell*, 303 Conn. 246, 265, 33 A.3d 167 (2011) ("sentencing principles generally . . . require the court [to] fashion a sentence that fits the crime and the criminal" (internal quotation marks omitted)). Thus, the larceny convictions present a reasonable possibility of prejudicial collateral consequences from which the court can grant practical relief, namely, consideration of the larceny convictions against the petitioner in future criminal proceedings.

The commissioner argues that, "regardless of whether consequences from the [larceny convictions] might save a typical case from being moot, the unique rationale employed in immigration mootness cases should be recognized." Thus, "if a conviction is not the sole reason for adverse immigration consequences, such as deportation, denial of reentry or inability to obtain naturalization, an appeal is moot because reversal can provide no practical *immigration* relief." (Emphasis in original.) We disagree. In each of our previously discussed Supreme Court cases analyzing mootness when federal immigration law is implicated, the appealing party had already been removed from the United States by the time their appeal reached the court. See *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 204; *State* v. *Jerzy G.*, supra, 326 Conn. 210; *State* v. *Aquino*, supra, 279 Conn. 298. Therefore, the alleged sources of prejudicial collateral consequences in those cases were the parties' removal from the United States and their potential bar from reentry, to which the court limited its analysis. But see *State* v. *Jerzy G.*, supra, 326 Conn. 224 (concluding that practical relief could be provided from defendant's ordered rearrest and imposed bond, should he be permitted reentry into United States). This case, however, alleges additional

sources of prejudicial collateral consequences other than removal and barred reentry, sources which are uniquely present because the petitioner is incarcerated under subsequent convictions and has yet to have his ordered removal from the United States executed. Because "every presumption favoring jurisdiction should be indulged"; (internal quotation marks omitted) *St. Juste* v. *Commissioner of Correction*, supra, 218; we conclude that the larceny convictions do give rise to a reasonable possibility of prejudicial collateral consequences from which practical relief can be granted.

## II

Because we have concluded that the operative petition is not moot, we turn to the petitioner's second claim on appeal. The petitioner claims that his constitutional right to the effective assistance of counsel was violated by counsel's failure to accurately advise him about the immigration consequences of pleading guilty. The commissioner argues that because the court "dismissed [the operative petition] without deciding its merits, it did not make sufficient factual findings to enable appellate review." Therefore, the commissioner argues that, "if the [operative petition] is not moot, the case should be remanded for the . . . court to make factual findings and decide the merits . . . ." We agree with the commissioner.

We begin by setting forth the principles of law and standard of review. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Footnote omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 277–78, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017).

The first prong of *Strickland* was discussed in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "In *Padilla* . . . the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires defense counsel to accurately advise a nonciti-

zen client of the immigration consequences of a guilty plea. . . . [T]he Supreme Court recognized that there may be occasions when the consequences of a guilty plea will be unclear or uncertain to competent defense counsel. . . . In those circumstances, counsel need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. . . . But when the immigration consequences under federal law are clearly discernable, *Padilla* requires counsel to accurately advise his client of those consequences. . . . For some convictions, federal law calls for deportation, subject to limited exceptions. . . . In these circumstances, because the likely immigration consequences of a guilty plea are truly clear, counsel has a duty to inform his client of the deportation consequences set by federal law." (Citations omitted; internal quotation marks omitted.) *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 511–12, 142 A.3d 243 (2016). In *Budziszewski*, "[b]ecause federal law called for deportation for the petitioner's conviction, his counsel was required to unequivocally convey to the petitioner that federal law mandated deportation as the consequences for pleading guilty." Id., 512.

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 278.

The petitioner argues that, "[a]lthough the . . . court did not rule on the merits of [the operative petition], it made all of the factual findings necessary for this court to exercise plenary review over [the operative petition]." Alternatively, the petitioner argues that "to the extent that this court concludes that there are factual questions that were not resolved by the . . . court, but that are necessary to permit review of [his] claims, those findings can be made by this court because they are inevitable as a matter of law or are based on the uncontroverted evidence and testimony in the record."

Portions of Judge Sferrazza's memorandum of decision seem to bear on the two prongs of *Strickland*. Nevertheless, the merits of the petitioner's *Padilla* claim were not discussed in Judge Sferrazza's memorandum of decision. Furthermore, Judge Sferrazza did not make any specific findings with respect to issues that the parties disputed. For instance, with respect to deficient performance, there were no specific findings made as to, inter alia, what Attorney Lamontagne told

the petitioner concerning the consequences he faced under federal immigration law by pleading guilty to the larceny charges and accepting the sentences negotiated by Attorney Lamontagne, or whether there were any viable alternative options to doing so. With respect to the prejudice prong, the parties disputed the strength of the prosecution's larceny cases against the petitioner and whether the petitioner understood the immigration consequences during the plea canvass. Moreover, where the petitioner and Attorney Lamontagne provided conflicting testimony, the court did not indicate whose testimony it credited. Thus, there are existing factual disputes that preclude us from deciding the petitioner's *Padilla* claim. See *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 517 (concluding that, although, "[i]n some cases, [the court is] able to resolve an appeal without reversal by applying the correct legal standard to the facts found by the habeas court," court could not do so because habeas court made insufficient findings); *State* v. *Daly*, 111 Conn. App. 397, 400, 960 A.2d 1040 (2008) ("it is well established that as an appellate tribunal, we do not find facts"), cert. denied, 292 Conn. 909, 973 A.2d 108 (2009). Accordingly, we remand the case to the habeas court to conduct a new trial.[20]

The judgment is reversed and the case is remanded for a new habeas trial.

In this opinion the other judges concurred.

[1] The petitioner also claims that his "constitutional right to effective assistance of counsel . . . was violated by counsel's failure to adequately advise [him] about the immigration consequences of pleading guilty." Because we conclude in part II of this opinion that the court did not make sufficient factual findings to enable our review of this claim, we do not reach it but, instead, remand the case for a new trial. See footnote 20 of this opinion.

[2] The petitioner further pleaded guilty to being a persistent larceny offender under General Statutes § 53a-40.

[3] The petitioner's habeas counsel represented that, as of the date of trial on his habeas petition, the petitioner had completed serving his concurrent 364 day sentences. The petitioner's counsel further represented that the petitioner was currently serving sentences for a subsequent conviction of burglary in the third degree, attempt to commit tampering with physical evidence, and attempt to commit arson in the second degree, all of which arose from events occurring in March, 2013. See *State* v. *Stephenson*, 187 Conn. App. 20, 22, 201 A.3d 427, cert. granted, 331 Conn. 914, 204 A.3d 702 (2019). The petitioner received a total effective sentence of twelve years of incarceration followed by eight years of special parole on this conviction. Id., 29. On direct appeal, this court reversed the trial court's judgment of conviction rendered against the petitioner and remanded the case with direction to render a judgment of acquittal on all charges. Id., 22. The state petitioned for certification to appeal from this court's judgment, which our Supreme Court granted in part. *State* v. *Stephenson*, 331 Conn. 914, 204 A.3d 702 (2019). The petitioner remains incarcerated pending resolution of the state's appeal to our Supreme Court.

[4] In 2010, a judgment of conviction of, inter alia, robbery in the third degree was rendered against the petitioner, which judgment this court affirmed on appeal. *State* v. *Stephenson*, 131 Conn. App. 510, 512–13, 27 A.3d 41 (2011), cert. denied, 303 Conn. 929, 36 A.3d 240 (2012).

Thereafter, the petitioner brought a habeas action in the United States District Court for the District of Connecticut challenging the robbery conviction. *Stephenson* v. *Connecticut*, United States District Court, Docket No. 3:12CV1233 (RNC) (D. Conn. March 31, 2014). The petitioner raised three claims in his original petition and, subsequently, filed two motions to amend his petition to allege additional claims. Id. The District Court denied the

petitioner's motions to amend on the ground that the claims raised therein—ineffective assistance of counsel, improper dismissal of a juror, and actual innocence—were procedurally defaulted. Id. The District Court also denied the petition. Id.

On appeal, the Second Circuit Court of Appeals "remanded for a determination of whether the new claims, although procedurally defaulted, can be adjudicated on the merits based on [the] petitioner's claim that he is actually innocent of [the robbery conviction]." *Stephenson* v. *Connecticut*, United States District Court, Docket No. 3:12CV1233 (RNC) (D. Conn. January 8, 2018); see also *Stephenson* v. *Connecticut*, 639 Fed. Appx. 742, 746 (2d Cir. 2016). The District Court, on remand, "conclude[d] that [the petitioner] ha[d] not met his burden of establishing a credible, compelling claim of actual innocence and therefore dismiss[ed] the petition." *Stephenson* v. *Connecticut*, supra, United States District Court, Docket No. 3:12CV1233 (RNC). Neither the District Court nor the Second Circuit issued the petitioner a certificate of appealability, and, thus, his appeal from the District Court's judgment was dismissed. See *Stephenson* v. *Connecticut*, United States Court of Appeals, Docket No. 18-367 (2d Cir. February 8, 2019).

[5] The petitioner did not file a direct appeal from the larceny convictions.

[6] The petitioner also alleged that Attorney Lamontagne provided deficient performance by failing "to advise [him] that a guilty plea constituted a waiver of his right to appeal from the trial court's denial of his motion for the supervised diversionary program under [General Statutes] § 54-56*l*." The court denied that claim and the petitioner does not appeal from that decision. Therefore, we do not discuss it in this opinion.

[7] The petitioner thereafter filed a "motion for reconsideration and reargument," which Judge Sferrazza denied.

[8] The petitioner also argues that (1) the court's improper dismissal of his claim is evidenced by the court reaching the merits of his claim that Attorney Lamontagne provided ineffective assistance of counsel by failing "to advise [him] that a guilty plea constituted a waiver of his right to appeal from the trial court's denial of his motion for the supervised diversionary program under [General Statutes] § 54-56*l*"; see footnote 6 of this opinion; and (2) his claim "is a quintessential example of [one] that is capable of repetition, yet evading review." In light of our conclusion in part I C of this opinion that the petitioner's claim is not moot because there is a reasonable possibility of prejudicial collateral consequences due to future involvement with the criminal justice system, we do not consider these arguments.

[9] In order for the petitioner's argument to have any merit we would have to assume that his federal habeas petition challenging the robbery conviction will be successful on the merits. This we cannot do. See *Daniels* v. *United States*, 532 U.S. 374, 382, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001) ("[t]hus, we have held that if, by the time of sentencing under the [Armed Career Criminal Act of 1984], a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence"); *McKenzie* v. *Dept. of Homeland Security*, United States District Court, Docket No. 3:04CV0067 (JBA) (D. Conn. April 23, 2004) ("[t]hus, the conviction is presumptively valid and may be used by the immigration authorities as a basis for an order of removal until set aside on direct or collateral review"); *Hinds* v. *Commissioner of Correction*, 321 Conn. 56, 113, 136 A.3d 596 (2016) (*Zarella*, *J.*, dissenting) ("The habeas petitioner does not come before the [habeas] [c]ourt as one who is innocent, but on the contrary as one who has been convicted by due process of law . . . . Accordingly, the petitioner bears a heavy burden of proof when attacking a presumptively valid conviction." (Citation omitted; internal quotation marks omitted.)); *Myers* v. *Manson*, 192 Conn. 383, 387, 472 A.2d 759 (1984) ("the plaintiff in a habeas corpus proceeding bears a heavy burden of proof"). Because we cannot assume that the robbery conviction will be vacated, that conviction supports the petitioner's ordered removal and bars reentry regardless of whether the petitioner ultimately were to succeed on the merits of the operative petition challenging the larceny convictions. See part I B of this opinion. Accordingly, we reject this argument.

Moreover, on February 8, 2019, nineteen days *prior to* the petitioner filing his principal brief in this appeal on February 27, 2019, the Second Circuit dismissed the petitioner's appeal from the District Court's dismissal of his petition for a writ of habeas corpus challenging the robbery conviction. See footnote 4 of this opinion. Even if the petitioner's argument possessed any merit in the abstract, the fact that his federal habeas petition was dismissed would obviate its applicability to his case.

[10] The commissioner also argues that, because the petitioner did not argue

"at trial or on appeal that the instant convictions are his only bar to reentry to the United States," we "should not reach the issue . . . the parties did not explore, and the habeas court did not make factual findings on . . . ." The commissioner cites *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 84 A.3d 840 (2014), in support of his argument that "this [c]ourt should not review the issue." In citing to *Blumberg Associates Worldwide, Inc.*, the commissioner ignores language in that case compelling this court to address the question of whether the robbery conviction would serve as a permanent bar to the petitioner's reentry into the United States because that question implicates whether the operative petition is moot and, thus, implicates our subject matter jurisdiction. See id., 149 ("Our cases have recognized a number of circumstances in which the reviewing court not only can but is obligated to exercise its power to review an unpreserved claim if certain conditions are met. First, this court repeatedly has held that claims implicating subject matter jurisdiction may be raised by the parties or by the court at any time . . . and must be resolved once they are raised." (Citation omitted.)); see also *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 209 n.10 ("We released our decision in *State v. Jerzy G.* [326 Conn. 206, 162 A.3d 692 (2017)], after the parties filed their briefs in the present appeal but prior to oral argument. The parties have filed supplemental briefs addressing the effect, if any, of our decision in *Jerzy G.* on the present appeal, in response to our order . . . ."); *St. Juste.* v. *Commissioner of Correction*, supra, 208 ("mootness implicates the court's subject matter jurisdiction" (internal quotation marks omitted)). Because our order for supplemental briefing from the parties involved questions that concern mootness and, thus, implicate subject matter jurisdiction, it was proper for us both to issue the order and now to discuss the questions raised therein.

[11] General Statutes (Rev. to 2005) § 53a-62 (a) provides: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror." The legislature made significant changes to § 53a-62 since the events underlying the appeal in *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 201–202 n.3. See Public Acts 2017, No. 17-111, § 4; Public Acts 2016, No. 16-67, § 7. Our references in this opinion to § 53a-62 (a) are to the 2005 revision of the statute.

[12] "In general, the [board] and [the Second Circuit] have applied either a categorical or a modified categorical approach to determine whether a specific crime falls within a grounds for removability. . . . Under the categorical approach, a reviewing court look[s] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the] petitioner's crime. . . . This approach requires a court to focus on the intrinsic nature of the offense, rather than on the singular circumstances of an individual petitioner's crimes, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant. . . . In describing the categorical approach, we have held that every set of facts violating a statute must satisfy the criteria for removability in order for a crime to amount to a removable offense; the [board] may not justify removal based on the particular set of facts underlying an alien's criminal conviction.

"Under the modified categorical approach, however, a limited review of a petitioner's circumstances may be warranted where a statute of conviction is divisible. . . . A statute is divisible if it encompasses multiple categories of offense conduct, some, but not all, of which would categorically constitute a removal offense. . . . In reviewing a conviction under a divisible statute, we may refer to the record of conviction to ascertain whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses. . . . The record of conviction includes, inter alia, the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." (Citations omitted; internal quotation marks omitted.) *Wala* v. *Mukasey*, supra, 511 F.3d 107–108.

[13] See *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 204; *State* v. *Jerzy G.*, supra, 326 Conn. 210; *State* v. *Aquino*, supra, 279 Conn. 298.

[14] See *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 210; *State* v. *Jerzy G.*, supra, 326 Conn. 223; *State* v. *Aquino*, supra, 279 Conn. 298 n.3.

[15] Although the petitioner does not argue that an exception applies under 8 U.S.C. § 1182 (a) (2) (A) (ii) to the robbery conviction constituting a crime

involving moral turpitude, we note that, indeed, no exception is available to him because he was over the age of eighteen when he committed the robbery; see 8 U.S.C. § 1182 (a) (2) (A) (ii) (I); and the maximum penalty possible for the robbery conviction exceeds imprisonment for one year. See 8 U.S.C. § 1182 (a) (2) (A) (ii) (II); see also General Statutes § 53a-136 (b) ("[r]obbery in the third degree is a class D felony"); General Statutes § 53a-25 (a) ("[a]n offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony").

[16] The petitioner argues that "a case does not become moot until [the] petitioner is actually physically removed from the United States." This argument, as it pertains to the facts presented in this case, has no merit. The fact that the petitioner remains incarcerated in the United States has no bearing on whether relief could be provided to him from his order of removal, which eventually will result in his physical removal from the United States. The petitioner has been ordered removed under the larceny convictions and the robbery conviction, but has challenged only the larceny convictions in the operative petition. Even if the petitioner were to succeed on the merits of the operative petition, resulting in the larceny convictions being vacated, the robbery conviction remains valid and will continue to support the petitioner's ordered removal and bar any future reentry into the United States. See footnote 9 of this opinion.

[17] In contrast to future involvement with the criminal justice system, which is a recognized source of prejudicial collateral consequences from which practical relief can be afforded; see part I C of this opinion; the potential for a pardon is conjectural because, in the absence of one, we presume that a conviction is valid. See *Hinds* v. *Commissioner of Correction*, supra, 321 Conn. 113; *Myers* v. *Manson*, supra, 192 Conn. 387.

[18] The petitioner argues that the larceny convictions present him with other forms of prejudicial collateral consequences while incarcerated, such as adverse effects on his inmate level and eligibility for programs and parole while in the commissioner's custody. Because we conclude that the larceny convictions, as a matter of law, give rise to a reasonable possibility of prejudicial collateral consequences in connection with potential future involvement with the criminal justice system, we do not reach these claimed alternative sources of prejudicial collateral consequences.

[19] In light of the petitioner's ordered removal from the United States, it is unclear whether he will face other collateral consequences presumed in cases in which mootness is raised as an issue because the sentence of a criminal conviction has been served, consequences such as community stigma and decreased employment opportunities. See *State* v. *McElveen*, supra, 261 Conn. 216. Irrespective of his impending removal from the United States, however, the larceny convictions could be considered against the petitioner in the future should he become involved in the criminal justice system prior to the execution of his ordered removal. Because that potentiality is sufficient to give rise to prejudicial collateral consequences, we need not consider whether the larceny convictions will affect the petitioner's ability to secure employment or his reputation in the community such that they are legally cognizable prejudicial collateral consequences under the circumstances presented in this case.

[20] During the pendency of this appeal, Judge Sferrazza retired. As a result, we remand the case to the habeas court to conduct a new trial on the merits of the operative petition.